IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RAMON DEHONNEY, )
 )
       Plaintiff, )
 ) Civil Action No. 17-661
v. )
 ) Hon. Nora Barry Fischer
G4S SECURE SOLUTIONS (USA), INC., )
 )
       Defendant. )

**<u>MEMORANDUM ORDER</u>**

Presently before the Court is Defendant G4S Secure Solutions (USA), Inc.'s Motion to Dismiss Plaintiff's Amended Complaint and supporting briefing, (Docket Nos. [12], [13]); Plaintiff's response in opposition, (Docket No. [15]); and Defendant's reply, (Docket No. [19]).[1] After careful consideration of the parties' submissions; the allegations contained in Plaintiff's Amended Complaint, (Docket No. [10]); the standards governing motions to dismiss set forth by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and as articulated in Third Circuit precedent, *see, e.g.*, *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016); and for the following reasons, Defendant's Motion to Dismiss, (Docket No. [12]), is DENIED, without prejudice.

By way of background, in his Amended Complaint, Plaintiff, who is African American, alleges that he began working for Defendant as a Security Officer on June 21, 2010, and that he was promoted to Shift Supervisor in July 2011. (Docket No. 10 at ¶¶ 3, 5-6). Defendant has a

---

[1] The Court ordered Defendant to file a reply by August 31, 2017, (Docket No. 16), and the same was not filed. On September 5, 2017, Defendant filed a motion for an extension of time, stating that counsel understood the Order to mean that Defendant had until August 31, 2017, to file a reply brief, if the same was necessary. (Docket No. 17). The Court granted Defendant's motion and enlarged the time in which it could file a reply to September 12, 2017. (Docket No. 18). Defendant filed its reply on September 13, 2017. (Docket No. 19).

policy requiring its employees to have clean-shaven face. (*Id.* at ¶ 7). On September 15, 2011, Plaintiff provided Defendant with medical documentation stating that he could not shave as a result of his pseudofolliculitis barbae, which is a skin condition that almost exclusively affects African American men. (*Id.* at ¶¶ 8-9). After Brian Reiter, Defendant's Operations Manager, demanded that Plaintiff provide medical documentation regarding the condition that prevented him from shaving his face, Plaintiff provided him with a note from his physician. (*Id.* at ¶¶ 21-22).[2]

On November 18, 2012, Plaintiff called off from work because he was experiencing symptoms of ulcerative colitis ("UC"). (*Id.* at ¶ 23). On November 19, 2012, Reiter and Wilfred Howcroft, a supervisor, telephoned Plaintiff several times and advised him to shave before returning to work and stated that he would face disciplinary actions, including termination, if he was unshaven. (*Id.* at ¶¶ 24-27). Upon his return to work on November 20, 2012, Plaintiff was instructed to report to Howcroft's office. (*Id.* at ¶ 28). During the meeting, Reiter was on speaker phone. (*Id.* at ¶ 29). Both Howcroft and Reiter questioned why Plaintiff was unshaven, and Reiter questioned whether Plaintiff was attempting to get fired to collect unemployment. (*Id.* at ¶¶ 30-32). Plaintiff was sent home for not shaving and was told to return the next day for another meeting. (*Id.* at ¶ 33). At the second meeting, Plaintiff was questioned about his absence on November 18, 2012. (*Id.* at ¶¶ 34-35). After Plaintiff explained his UC diagnosis and provided medical documentation, he was told that he could arrive at work "a little late to deal with his UC" and that Human Resources would provide him with an application for FMLA leave. (*Id.* at ¶¶ 36-41). Plaintiff was not provided with the necessary paperwork and in

---

[2] The time frame is unclear, as Plaintiff initially alleges that he provided Defendant with medical documentation on September 15, 2011, (*id.* at ¶ 8), but then states that Reiter made his demand on June 15, 2011, "[d]espite the fact that [Plaintiff] provided [Defendant] with medical documentation on September 15, 2011," (*id.* at ¶¶ 21-22).

December 2012, Plaintiff was late to work as a result of his UC symptoms but was never disciplined. (*Id.* at ¶¶ 42-44). On January 12, 2013, Plaintiff was involved in a car accident and was hospitalized overnight. (*Id.* at ¶ 45). Upon his return to work, Plaintiff was terminated for excessive tardiness. (*Id.* at ¶¶ 46-47).[3]

In his Complaint, Plaintiff asserts nine claims against Defendant for discrimination under Title VII; discrimination under the Pennsylvania Human Relations Act ("PHRA"); refusal to accommodate under the Americans with Disabilities Act ("ADA"); refusal to accommodate under the PHRA; retaliation under Title VII; retaliation under the PHRA; retaliation as to race discrimination under the ADA; retaliation as to disability discrimination under the ADA; and retaliation as to disability discrimination under the PHRA; discrimination under the Age Discrimination in Employment Act of 1967 ("the ADEA"); and discrimination under Title VII. (*Id.* at ¶¶ 48-102).

Defendant initially argued that Plaintiff's claims are barred because they were untimely filed with the Equal Employment Opportunity Commission ("EEOC"). (Docket No. 13 at 4-5). In his response to Defendant's Motion to Dismiss, Plaintiff attached his Charge of Discrimination and a Notice of Right to Sue Letter. (Docket Nos. 15-1, 15-2). Given same, Defendant has withdrawn its arguments as to subject matter jurisdiction and statute of limitations. (Docket No. 19).

The Court finds meritless Defendant's remaining arguments that Plaintiff has failed to state claims for discrimination, retaliation, or under the ADA. (Docket Nos. 13 at 5-10, 19 at 1-4). Plaintiff's allegations, as set forth above, are sufficient to state plausible claims. First,

---

[3] Plaintiff states that the car accident occurred on January 12, 2013, that he returned to work on January 15, 2016, and that he was terminated on January 16, 2013. Based upon the Complaint, it appears that Plaintiff intended to allege that he returned to work on January 15, 2013. (*Id.* at ¶¶ 45-47).

Plaintiff has sufficiently stated his claims falling under the ADA for his UC and pseudofolliculitis barbae conditions. It is evident that Plaintiff's UC condition may meet the definition of a disability under the ADA. *See, e.g.*, *Wingard v. Pennsylvania State Police*, No. 12-CV-1500, 2013 WL 3551109, at *4-5 (W.D. Pa. July 11, 2013) (denying motion to dismiss an ADA claim where the plaintiff had UC, among other conditions, and explaining that "[w]hile it is not certain that [the plaintiff's] conditions will be proven to meet the stringent definition of a 'disability' under the ADA . . . at this early stage of the case it is plausible") (footnote omitted); *see also Lombard v. TZ Ins. Sols., LLC*, No. 13-CV-667, 2014 WL 2600091, at *2-3 (M.D. Fla. June 10, 2014) (denying motion to dismiss ADA claims where the plaintiff alleged that she was subject to discipline and termination as a result of missing work due to her UC); *Winokur v. Office of Court Admin.*, 190 F. Supp. 2d 444, 452-53 (E.D.N.Y. 2002) (denying motion to dismiss as to the plaintiff's ADA claims where the plaintiff alleged that he was diagnosed with UC, which made it difficult for him to arrive at work on time every morning).

While Defendant disputes whether pseudofolliculitis barbae constitutes a disability, the Court concludes that at this early stage of the proceedings, it is plausible that Plaintiff's pseudofolliculitis barbae condition is a disability. *See, e.g.*, *Antrum v. Washington Metro. Area Transit Auth.*, 710 F. Supp. 2d 112 (D.D.C. 2010) (addressing whether pseudofolliculitis barbae is a disability at summary judgment); *Stewart v. City of Houston*, No. 07-CV-4021, 2009 WL 2849728 (S.D. Tex. Sept. 3, 2009) (same), *aff'd*, *Stewart v. City of Houston Police Dep't*, 372 F. App'x 475 (5th Cir. 2010); *Parker v. Claiborne Cty. Mississippi*, No. 07-CV-212, 2009 WL 73803 (S.D. Miss. Jan. 8, 2009) (same); *see also Seaborn v. State of Fla., Dep't of Corr.*, 143 F.3d 1405 (11th Cir. 1998) (affirming the district court after it addressed whether

4

pseudofolliculitis barbae is a disability at summary judgment); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1114 (11th Cir. 1993) (same); *Wingard*, 2013 WL 3551109, at *5.

The Court likewise finds that Plaintiff has sufficiently stated his claims for retaliation, as he has alleged that Howcroft advised him in November 2012 that he could arrive late to work due to his UC and that he was terminated for excessive tardiness in January 2013. *See, e.g.*, *Lombard*, 2014 WL 2600091, at *4 (denying motion to dismiss retaliation claim where the plaintiff alleged that she was terminated less than a month after requesting an accommodation for her UC); *see also Busch v. Oswayo Valley Sch. Dist.*, No. 15-CV-239, 2016 WL 5394085, at *9 (W.D. Pa. Sept. 27, 2016) (denying motion to dismiss retaliation claim because the plaintiff "ha[d] alleged facts suggesting that she was constructively discharged after she requested reasonable accommodations for her disability").

Finally, Plaintiff has sufficiently stated his claims for discrimination, as he has alleged that he suffers from pseudofolliculitis barbae, that he provided medical documentation, and that Reiter and Howcroft continued to demand that he shave. As Plaintiff has argued, his allegations create an inference of intentional discrimination. (Docket No. 15 at 7-8). Thus, the Court rejects Defendant's assertion that Plaintiff's claim is insufficient because Plaintiff has not pled that similarly situated non-members of the protected class were treated more favorably. *See, e.g.*, *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010) (explaining that the plaintiff "was not required to plead comparator evidence to support an inference of discrimination" because "[s]uch an inference could be supported in a number of ways, including, but not limited to, comparator evidence, evidence of similar racial discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors suggesting racial animus").

For these reasons,

IT IS HEREBY ORDERED that Defendant G4S Secure Solutions (USA), Inc.'s Motion to Dismiss Plaintiff's Amended Complaint, (Docket No. [12]), is DENIED, without prejudice to renewing said arguments in a motion for summary judgment filed after the completion of fact discovery in this case; and

IT IS FURTHER ORDERED that Defendant shall file its Answer to Plaintiff's Amended Complaint by **October 12, 2017**.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: September 28, 2017

cc/ecf: All counsel of record